**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| POLICE BENEVOLENT ASSOCIATION, LOCAL 1910, ET AL., | | CASE NO. 2011–78 |
| | Plaintiffs, | |
| v. GOVERNMENT OF THE VIRGIN ISLANDS, ET AL., | | |
| | Defendants. | |
| ST. CROIX FEDERATION OF TEACHERS, LOCAL 1826, ET AL., | | CASE NO. 2011–79 |
| | Plaintiffs, | |
| v. GOVERNMENT OF THE VIRGIN ISLANDS, ET AL., | | |
| | Defendants. | |
| UNITED STEEL, PAPER & FORESTRY, RUBBER, MANUFACTURING, ET AL., | | CASE NO. 2011–76 |
| | Plaintiffs, | |
| v. GOVERNMENT OF THE VIRGIN ISLANDS, ET AL., | | |
| | Defendants. | |

Lead Case: *Police Ben. Ass'n, et al. v. GVI, et al.*
Civil No. 2011-78
Memorandum and Order
Page 2

| | |
|---|---|
| AMERICAN FEDERATION OF TEACHERS, LOCAL 1825, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> GOVERNMENT OF THE VIRGIN ISLANDS, ET AL., <br><br> Defendants. | CASE NO. 2011–77 |
| INTERNATIONAL ASSOCIATION OF FIREFIGHTERS LOCAL 2125, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> GOVERNMENT OF THE VIRGIN ISLANDS, ET AL., <br><br> Defendants. | CASE NO. 2011–81 |

## MEMORANDUM AND ORDER

Before the Court is the Legislature of the Virgin Islands' motion to disqualify Nizar A. DeWood, Esq., as counsel for plaintiffs Police Benevolent Association (Local 1910, St. Croix Chapter), Law Enforcement Supervisors Union (Local 119, St. Croix Chapter), Arthur A. Joseph, Sr. and Freddy Ortiz, Jr. (collectively, the "PBA/LESU"). The Legislature contends that disqualification is appropriate because Attorney DeWood wrongfully communicated with members of the Legislature in violation of Rule 4.2 of the ABA Model Rules of Professional Conduct. Plaintiffs opposes the motion, arguing that any contacts that occurred were prior to the initiation of the lawsuit and therefore outside the scope of Rule 4.2, or were otherwise authorized pursuant to Rule 4.2.

Lead Case: *Police Ben. Ass'n, et al. v. GVI, et al.*
Civil No. 2011-78
Memorandum and Order
Page 3

## I. Relevant Facts[1]

On June 22 or 23, 2011[2], the Legislature of the Virgin Islands passed Act. No. 7261, the Virgin Islands Economic Stability Act of 2011 ("the Act"). A few days after the passage of the Act, plaintiffs' representative contacted Attorney DeWood for advice concerning the implications of the new Act. In order to learn more about the Act, Attorney DeWood attempted to contact several Senators on St. Croix, eventually speaking with Senators Terrence Nelson and Nereida Rivera O'Reilly.[3]

On June 28, 2011, Attorney DeWood spoke with Senator Nelson for about 10 minutes, during which the Senator described the Act and why he voted against its passage. Attorney DeWood also spoke with Senator Rivera O'Reilly, who explained her reasons for voting against the Act, and who provided to Attorney DeWood on July 2, 2011 with a copy of a draft of the Act and some financial statements with her notations, a copy of the letter transmitting the bill to the Governor, and copies of the budget for the Virgin Islands for 2009 and 2010.[4]

---

1 The factual discussion is derived from the parties' written submissions (in Civil No. 11-cv-78: ECF 122, 124, 139, 142, 143, 146), as well as the representations of counsel in oral argument on October 25, 2011.

2 The Legislature represents that the enactment occurred on June 22 and plaintiff states the action took place on June 23. For purposes of the instant motion, this discrepancy need not be resolved.

3 Attorney DeWood also tried to speak with Senator Neville James, but due to other time constraints, no substantive conversation took place. Attorney DeWood stated that he informed the Senators with whom he spoke that he was an attorney, and that he had been approached by the President of the PBA with regard to the Act.

4 Attorney DeWood characterized the information and documents he received as being "public," and as copies of or contained in documents he received from the Legislature in discovery. He acknowledged, however, that the documents with Senator Rivera O'Reilly's notations were not exact copies of what he had received in discovery (because of the notations), nor had he provided copies of the documents to counsel for the Legislature.

Lead Case: *Police Ben. Ass'n, et al. v. GVI, et al.*
Civil No. 2011-78
Memorandum and Order
Page 4

Attorney DeWood disavows any further contact with members of the Legislature.[5]

Governor John P. deJongh, Jr. signed the Act into law on July 5, 2011. On behalf of his clients, Attorney DeWood filed suit challenging the Act on July 13, 2011.

## II. Applicable Law

Model Rule 4.2 provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Model Rules of Prof'l Conduct R. 4.2 (2011). The Rule serves to protect "the represented person against overreaching by adverse counsel, safeguard[s] the client-lawyer relationship from interference by adverse counsel, and reduce[s] the likelihood that clients will disclose privileged or other information that might harm their interests." ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 97-408, p. 2 (1997).

Rule 4.2 provides for three circumstances in which a lawyer may contact a represented person: (1) when he has the person's counsel's permission, (2) when authorized by law, or (3) when authorized by court order. Comment 5 to Rule 4.2 provides that "[c]ommunications authorized by law may include communications by a lawyer on behalf of a client who is exercising a constitutional or other legal right to

---

5 In the course of briefing the instant motion, plaintiffs submitted a letter dated September 20, 2011 and signed by four Senators (ECF 142-2) that purports to claim that the Legislature's counsel does not represent them in this matter. Attorney DeWood states that he did not solicit the letter or have further personal contact with any Senator in connection therewith and that the letter resulted from discussions between his clients and one or more of the Senators.

Lead Case: *Police Ben. Ass'n, et al. v. GVI, et al.*
Civil No. 2011-78
Memorandum and Order
Page 5

communicate with the government." Model Rules of Prof'l Conduct R. 4.2 cmt. 5 (2011). In applying this principle to particular facts, the ABA Standing Committee on Ethics and Professional Responsibility advises that "the interest served by the no-contact rule . . . [must be balanced against] the constitutionally-based policy favoring citizen access to government decision makers. . . ." ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 97-408, p. 2. Accordingly, a lawyer representing a private party in a controversy with the government may communicate "directly with governmental officials who have authority to take or recommend action in the matter, provided the communication is solely for the purpose of addressing a policy issue, including settling the controversy." *Id.* The Committee concluded that, in order to effectuate the purposes of the Rule, the lawyer "must afford government counsel reasonable advance notice of an intent to communicate, in order to afford an opportunity for the officials to obtain advice of counsel before entertaining the communication." *Id.*

Where there has been a demonstrated violation of an attorney's ethical obligations, a court has the power to disqualify an attorney based on its inherent power to supervise the professional conduct of attorneys appearing before it. *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980)(citations omitted). "Because motions to disqualify seek to deprive the opposing party of their counsel of choice, and may be motivated by tactical concerns, they are generally not favored." *Jackson v. Rohm & Haas*, 2008 U.S. Dist. LEXIS 65632, at *5 (E.D. Pa. Aug. 26, 2008)(citations omitted).

Lead Case: *Police Ben. Ass'n, et al. v. GVI, et al.*
Civil No. 2011-78
Memorandum and Order
Page 6

"The burden is on the party seeking disqualification to clearly demonstrate that continued representation would be impermissible." *Jackson*, 2008 U.S. Dist. LEXIS 65632, at *5 (citations omitted). "Although disqualification ordinarily is the result of a finding that a disciplinary rule prohibits an attorney's appearance in a case, disqualification is never automatic." *Miller*, 624 F.2d at 1201 (citations omitted). *See also VECC, Inc. v. Bank of Nova Scotia*, 222 F. Supp.2d 717, 720 (D.V.I. 2002)(recognizing that "[i]n this jurisdiction, 'disqualification is never automatic.'"(citing *Brice v. HOCVIC*, 769 F. Supp. 193, 195 (D.V.I. 1990)).

In *United States v. Miller*, the Third Circuit cautioned that an attorney should be disqualified only when a court has determined, "on the facts of a particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule." 624 F.2d 1198 at 1201. In making this determination, the court "should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions." *Id.* (citations omitted). In determining the appropriate sanction for a Code violation, "[t]he maintenance of the integrity of the legal profession and its high standing in the community are important additional factors to be considered. . . ." *International Business Machines Corp. v. Levin*, 579 F. 2d 271, 283 (3d Cir. 1978) (citing *Hull v. Celanese Corp.*, 534 F.2d 568, 572 (2d Cir. 1975). In resolving a motion to disqualify, "the court has a wide discretion in framing its sanctions so as to

Lead Case: *Police Ben. Ass'n, et al. v. GVI, et al.*
Civil No. 2011-78
Memorandum and Order
Page 7

be just and fair to all parties involved." *International Business Machines Corp*, 579 F. 2d at 279.

### III. Analysis

Attorney DeWood does not dispute (1) that he communicated about the subject of his current representation with members of the Legislature, and (2) that he neither sought nor obtained the consent of the Legislature's counsel to engage in such communication.[6] Attorney DeWood defends his communications as either outside the ambit of Model Rule 4.2 because there was no suit yet filed against the Legislature, or because such communication was "authorized by law."

With respect to the timing of the communications, the predecessor of Rule 4.2, which prohibited communication with a represented "party," rather than with a "person," has been interpreted such that its application "does not depend on a proceeding having actually commenced." ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 95-396, pp. 5-7, (1995)(citing cases and state bar association opinions). Now that Rule 4.2 has been broadened to include "person" in place of "party," there is no reason to conclude that the reach of Rule 4.2's prohibition was in any way narrowed to exclude

---

6 There seems to be some dispute as to whether the General Counsel of the Legislature "represents" the Senators with whom Attorney DeWood communicated. The Legislature contends that its own Rules provide that the Office of Legislative Legal Counsel does represent the Senators in their official capacities, although certain individual Senators disavow the representation. *Compare* ECF 142-2 *with* ECF 129-1 at p. 3 *and* 129-2, Rule 403. Further, it is not clear from the record that Attorney DeWood knew of these rules or such representation. He stated that he had "no idea" about the Senators' legal representation. As to whether it could be inferred from the circumstances that he had such knowledge, Attorney DeWood does not really challenge the motion on that basis, but it nevertheless would have been logical for him to assume the members of the Legislature are in fact represented and advised by legal counsel in all of their official activities. The American Bar Association's Standing Committee on Ethics and Professional Responsibility suggests a practical approach to this issue be employed. ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 95-396, at p. 11 (1995).

Lead Case: *Police Ben. Ass'n, et al. v. GVI, et al.*
Civil No. 2011-78
Memorandum and Order
Page 8

cases in which no lawsuit had yet been filed. As a result, the Court finds that the timing of these communications as "pre-litigation" is not dispositive.

The crux of plaintiffs' opposition is the notion that the communications at issue here were not in violation of Rule 4.2 because they were authorized by law. Plaintiffs rely heavily on Comment 5 to Model Rule 4.2 to justify seemingly any and all communications their attorney may have with a senator, since senators are governmental officials. Comment 5 is not so all-inclusive. Rather, the Comment states "[c]ommunications authorized by law *may include* communications by a lawyer on behalf of a client who is exercising a constitutional or other legal right to communicate with the government," and "[t]he fact that a communication does not violate a state or federal constitutional right *is insufficient to establish that the communication is permissible under this Rule.*" Model Rules of Prof'l Conduct R 4.2 cmt. 5 (2011) (emphasis added). Thus, according to the American Bar Association, the right to communicate with government officials without running afoul of Rule 4.2's proscriptions is not unlimited.

The parties have not identified any controlling authority that discusses the limits of an attorney's ability to communicate with government officials. The American Bar Association's Standing Committee on Ethics and Professional Responsibility addressed this issue on its formal Opinion 97-408 (1997), reviewed the available authorities, and concluded:

> Rule 4.2 generally protects represented government entities from unconsented contacts by opposing counsel, with an important exception based on the constitutional right to petition and the derivative

Lead Case: *Police Ben. Ass'n, et al. v. GVI, et al.*
Civil No. 2011-78
Memorandum and Order
Page 9

> public policy of ensuring a citizen's right of access to government decision makers. Rule 4.2 permits a lawyer representing a private party in a controversy with the government to communicate about the matter with government officials having authority to take or to recommend action in the matter, provided that the sole purpose of the communication is to address a policy issue, including settling the controversy. In such a situation the lawyer must give government counsel reasonable advance notice of his intent to communicate with such officials in order to afford them an opportunity to seek advice of counsel before deciding whether to entertain the communication.

ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 97-408, at p. 9.[7] The Opinion further cautions that where case law does not define the limits on such communications, the attorney for a private party in litigation "would be well advised to obtain court approval to interview a government official . . . ." *Id.*

In the present circumstances, based upon the record the Court concludes that, given the purposes of Rule 4.2, Attorney DeWood may have been permitted to communicate with the Senators about the Act, but he should have given advance notice to the Legislature's counsel of his intent to do so. But even if the contacts that occurred here are deemed to have been in violation of the Model Rule as interpreted by the American Bar Association, the area is unsettled enough that the conduct at issue does not warrant disqualification. This is particularly true in light of the balance of the parties' interests, and given counsel's representations (1) that the material and information he received was entirely in the public record (with the exception of the documents with

---

7 See also Alaska Bar Association Ethics Committee Ethics Opinion No. 94-1 (1994)(an attorney representing a party in litigation may not communicate with a government official with decision-making authority regarding the litigation without consent of counsel; even if the official does not have ultimate authority in the litigation, notice should be given to government's counsel); Kentucky Bar Association Ethics Opinion KBA E-322 (1988)(discussing contacting minority members of a public body).

Lead Case: *Police Ben. Ass'n, et al. v. GVI, et al.*
Civil No. 2011-78
Memorandum and Order
Page 10

Senator Rivera O'Reilly's notations on it), and (2) that he does not intend to use the information he received in his case.

That disqualification is not appropriate does not mean, however, that the attorney's conduct is entirely without consequences. First, plaintiffs must produce to the Legislature the documents Attorney DeWood received from Senator Rivera O'Reilly. Second, plaintiffs PBA/LESU may not use in support of their case any of the statements made to Attorney DeWood by Senators Nelson or Rivera O'Reilly, or the documents obtained from Senator Rivera O'Reilly.

### IV. Conclusion

For the foregoing reasons, it is hereby ORDERED that the Legislature's motion to disqualify is DENIED, and it is further

ORDERED that plaintiffs shall produce the documents received from Senator Rivera O'Reilly to counsel for the Legislature within five days of the date of this Order, and it is further

ORDERED that plaintiffs PBA/LESU shall not use in support of their case any of the statements made to Attorney DeWood by Senators Nelson or Rivera O'Reilly, or the documents obtained from Senator Rivera O'Reilly.

S_____
**RUTH MILLER**
UNITED STATES MAGISTRATE JUDGE