DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

AMERICAN FEDERATION OF TEACHERS, )
LOCAL 1825, VIRGIN ISLANDS STATE )
NURSES ASSOCIATION-CBU, and       )
UNITED INDUSTRIAL, SERVICE,       )
PROFESSIONAL AND GOVERNMENT       )
WORKERS OF NORTH AMERICA,         )
SEAFARERS INTERNATIONAL UNION OF )
NORTH AMERICA,                    )    Civil No. 2011-77
                                  )
            Plaintiffs,           )
                                  )
            v.                    )
                                  )
GOVERNMENT OF THE VIRGIN          )
ISLANDS, JOHN P. DE JONGH, JR.,   )
                                  )
            Defendants.           )
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━)
UNITED STEEL, PAPER & FORESTRY,   )
RUBBER, MANUFACTURING, ALLIED     )
INDUSTRIAL AND SERVICE WORKERS    )
INTERNATIONAL UNION AFL-CIO-CLC, )     Civil No. 2011-76
                                  )
            Plaintiff,            )
                                  )
            v.                    )
                                  )
GOVERNMENT OF THE UNITED STATES )
VIRGIN ISLANDS, GOVERNOR JOHN P. )
DE JONGH, JR., FINANCE            )
COMMISSIONER ANGEL DAWSON,        )
DIRECTOR OF MANAGEMENT AND        )
BUDGET DEBRA GOTTLIEB,            )
                                  )
            Defendants.           )
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━)
                                  )
POLICE BENEVOLENT ASSOCIATION     )
LOCAL 1910, ST. CROIX CHAPTER,    )
LAW ENFORCEMENT SUPERVISORS       )
UNION LOCAL 119, ST. CROIX        )
CHAPTER, ARTHUR A. JOSEPH, SR., )
as president of Police            )
Benevolent Association, St.       )

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 2

Croix Chapter, and FREDDY ORTIZ, )
JR., as president of Law )
Enforcement Supervisors Union, )       Civil No. 2011-78
St. Croix Chapter )              Plaintiffs,
)
              v.                )
)
GOVERNMENT OF THE VIRGIN )
ISLANDS, GOVERNOR JOHN P. DE )
JONGH, JR., in his official )
capacity as Governor of the )
Virgin Islands, VIRGIN ISLANDS )
POLICE DEPARTMENT, DEBRA )
GOTTLIEB,  in her official )
capacity as Director of the )
Virgin Islands Office of )
Management and Budget, and )
LEGISTLATURE OF THE VIRGIN )
ISLANDS, )
)
              Defendants. )
_____ )
ST. CROIX FEDERATION OF )
TEACHERS, LOCAL 1926, and ROSA )
SOTO-THOMAS, in her official )
capacity as 1st Vice President of )
AFT Local 1826 and on behalf of )
all members of AFT Local 1826, )
              Plaintiffs, )       Civil No. 2011-79
)
              v.                )
)
GOVERNMENT OF THE VIRGIN )
ISLANDS, GOVERNOR JOHN P. DE )
JONGH, JR., in his official )
capacity as Governor of the U.S. )
Virgin Islands, ANGEL DAWSON, in )
his official capacity as )
Commissioner of Finance, VIRGIN )
ISLANDS DEPARTMENT OF EDUCATION, )
29th LEGISLATURE OF THE VIRGIN )
ISLANDS, and DEBRA GOTTLIEB, in )
her official capacity as Director )
of the Virgin Islands Office of )
Management and Budget, )
              Defendants )
_____ )

**Attorneys:**

**Michael J. Sanford, Esq.**
Sanford, Amerling & Associates
St. Croix, VI
**Richard P. Rouco, Esq.**
**Robert Moore Weaver, Esq.**
Quinn, Connor, Weaver, Davies & Rouco
Birmingham, AL
*For the plaintiff United Steel, Paper & Forestry, Rubber,*
*Manufacturing, Allied Industrial and Service Workers*
*International Union AFL-CIO-CLC,*

**Pedro K. Williams, Esq.**
Law Office of Frazer and Williams
St. Thomas, VI
*For the plaintiffs American Federation of Teachers, Local*
*1825; Virgin Islands State Nurses Association-CBU; and*
*United Industrial, Service, and Professional and Government*
*Workers of North America, Seafarers International Union of*
*North America,*

**Nizar A. Dewood, Esq.**
The Dewood Law Firm
St. Croix, VI
*For the plaintiffs Police Benevolent Association Local*
*1910, St. Croix Chapter; Law Enforcement Supervisors Union*
*Local 119, St. Croix Chapter; Arthur A. Joseph, Sr.,*
*President Of Police Benevolent Association, St.Croix*
*Chapter; and Freddy Ortiz, Jr., President Of Law*
*Enforcement Supervisors Union, St. Croix Chapter,*

**Emile A. Henderson, III, Esq.**
Law Office of Ross-Edwards and Henderson, LLP
St. Croix, VI
*For the plaintiffs St. Croix Federation of Teachers, Local*
*1826; and Rosa Soto-Thomas, First Vice President of AFT*
*Local 1826,*

**Joss N. Springette, Esq.**
Virgin Islands Office of the Attorney General, Labor
St. Thomas, VI
*For the defendants Government of the Virgin Islands;*
*Governor John P. De Jongh, Jr.; Angel Dawson, Finance*
*Commissioner; Debra Gottlieb, Director of Management and*
*Budget,*

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 4

**Augustin Ayala, Esq.**
Legislature of the Virgin Islands
        *For the defendant Legislature of the Virgin Islands.*

<u>**MEMORANDUM OPINION**</u>

**GÓMEZ, J.**

<u>I. FACTUAL AND PROCEDURAL HISTORY</u>

On June 22, 2011, the Legislature of the Virgin Islands
(the "Legislature") adopted Bill No. 29-0123, the Virgin Islands
Economic Stability Act ("VIESA"). VIESA became law on July 5,
2011, by signature of the Governor of the Virgin Islands, John
P. de Jongh, Jr. ("Governor de Jongh"), as Act No. 7261. VIESA
provided, among other things, that all employees of the
Executive and Legislative Branches of the Government of the
Virgin Islands making more than $26,000 a year in salary would
receive an eight percent reduction in pay.

Thereafter, the plaintiffs initiated this action. Plaintiff
United Steel, Paper & Forestry, Rubber, Manufacturing, Allied
Industrial and Service Workers International Union, AFL-CIO-CLC
("USW"), asserted six counts in its Complaint. Counts I, II, and
III alleged that VIESA violates the Impairment-of-Contracts
Clauses in the federal Constitution and the Virgin Islands
Revised Organic Act.[1] Count IV alleged that VIESA violates Title

------

[1] Count I asserted a claim arising under Title Forty-Two, Section 1983
of the United States Code against the individual defendants for violating the

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 5

Forty-Two, Section 1983 of the United States Code by interfering with the right to engage in collective bargaining. Count V alleged that VIESA violates the Equal Protection Clauses of the federal Constitution and the Virgin Islands Revised Organic Act. Count VI seeks injunctive relief barring the enforcement of VIESA. USW subsequently dismissed Counts IV and V pursuant to Federal Rule of Civil Procedure 41(a)(2).

Plaintiffs American Federation of Teachers, Local 1825 ("AFT Local 1825"); Virgin Islands State Nurses Association-CBU ("VISNA-CBU"); and United Industrial, Service and Professional and Government Workers of North America, Seafarers International Union of North America ("UIW-SIU") asserted four counts in their Complaint. Count I alleged a violation of the Impairment-of-Contracts Clauses of the federal Constitution and the Virgin Islands Revised Organic Act. Count II alleged that VIESA constitutes a taking in violation of the Takings Clauses of the Fifth Amendment and of the Virgin Islands Revised Organic Act. Count III alleges that VIESA violated Title Twenty-Four, Sections 373(a) and 378(a)(8) of the Virgin Islands Code. Count

---

Impairment-of-Contracts Clauses. Count II asserted a claim against the Government of the Virgin Islands itself for violating the Impairment-of-Contracts Clauses. Count III sought a declaratory judgment that VIESA violated the Impairment-of-Contracts Clauses.

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 6

IV alleges that the enactment of VIESA constituted a breach of the duty of good faith and fair dealing.

Plaintiffs Police Benevolent Association Local 1910, St. Croix Chapter; Law Enforcement Supervisors Union Local 119, St. Croix Chapter; Arthur A. Joseph, Sr., President of Police Benevolent Association, St. Croix Chapter; and Freddy Ortiz, Jr., President Of Law Enforcement Supervisors Union, St. Croix Chapter (collectively, "PBA and LESU"), asserted three counts in their Complaint. Count I alleged a violation of the Impairment-of-Contracts Clauses of the federal Constitution and the Virgin Islands Revised Organic Act. Count II alleged that VIESA violates the Due Process Clauses of the Fourteenth Amendment and the Virgin Islands Revised Organic Act. Count III alleges that VIESA violated the separation-of-powers doctrine under Title Two, Sections Twenty and Twenty-One of the Virgin Islands Code.

Plaintiffs St. Croix Federation of Teachers, Local 1826, and Rosa Soto-Thomas, First Vice President of Local 1826 (collectively, "AFT Local 1826"), asserted five counts in their Complaint. Count I alleged a violation of the Impairment-of-Contracts Clauses of the federal Constitution and the Virgin Islands Revised Organic Act. Count II alleged that VIESA violated the Due Process and Takings Clauses of the federal Constitution and the Virgin Islands Revised Organic Act. Count

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 7

III alleges that the enactment of VIESA constitutes a breach of contract. Count IV alleges that VIESA violated the separation-of-powers doctrine under Title Two, Sections Twenty and Twenty-One of the Virgin Islands Code. Count V alleges that the enactment of VIESA constituted a breach of the duty of good faith and fair dealing.

Each group of plaintiffs initiated a separate case. On July 27, 2011, the Court consolidated the cases as they presented similar questions of law. Thereafter, on December 5, 2011, the Court held a bench trial at which all parties were present. On March 29, 2012, the Court entered judgment against the plaintiffs and in favor of the defendants on Counts I, II, III, and VI of USW's Complaint; Counts I and II of AFT Local 1825, VISNA-CBU, and UIW-SIU's Complaint; Counts I and II of PBA's and LESU's Complaint; and Counts I and II of AFT Local 1826's Complaint. That disposed of the federal claims put forth by all plaintiffs. The only claims remaining were territorial-law claims.

On that same day, the Court directed the parties to submit briefs addressing whether it should exercise jurisdiction over the remaining Counts in the Complaints in light of the fact that there was no diversity of citizenship and all claims sounding in federal law had been dismissed. The parties did so.

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 8

Before the Court could rule on the jurisdictional issue, USW appealed the March 29, 2012, Judgment. Where, as here, a party appeals a trial court decision, the filing of a notice of appeal divests the district court of jurisdiction until the appellate court issues a decision on the appeal. *See Griggs v. Provident Consumer Disc., Co.*, 459 U.S. 56, 58 (1982). The consolidated cases were put on the suspense docket pending resolution of the appeal.

At the appellate level, the Third Circuit stated that it "may hear appeals only from final orders of the District Court." Jan. 16, 2013, Order, No. 12-2295 (3d Cir. 2013). The Third Circuit noted that the District Court had "ruled on all of Appellant's claims." *Id.* That said, the Third Circuit maintained that "[t]o the extent cases are consolidated for discovery and trial, an order concluding one consolidated case is not final or appealable when claims remain pending in the other consolidated case." *Id.* As there were still state law claims pending in the cases that had not been appealed, the Third Circuit found that the Judgment addressing the USW claims was not final. *Id.* The appeal was then dismissed for lack of jurisdiction. *Id.* Following the Third Circuit's order of dismissal, the consolidated cases were removed from the suspense docket.

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 9

Since this case began, there has been a change of circumstances.  The law at issue, VIESA, is no longer in effect.  *See* VIESA*,* Act No. 7261. VIESA stated in pertinent part that "Section 4 provides that the salaries of all Government employees in the executive and legislative branches shall be reduced by eight (8) percent . . . . The section will be in effect for two years from enactment." *Id.* VIESA was enacted on July 5, 2011.  As such, it ceased to be in effect on July 5, 2013.

Currently pending in this matter are six claims: AFT Local 1825, VISNA-CBU, and UIW-SIU's Counts III (Violation of Title Twenty-Four, Sections 373(a) and 378(a)(8) of the Virgin Islands Code) and IV (breach of the duty of good faith and fair dealing); PBA and LESU's Count III (violation of the separation-of-powers doctrine under Title Two, Sections Twenty and Twenty-One of the Virgin Islands Code); and AFT Local 1826's Counts III (breach of contract), IV (violation of the separation-of-powers doctrine under Title Two, Sections Twenty and Twenty-One of the Virgin Islands Code), and V (breach of the duty of good faith and fair dealing).

The issue of whether there remains a live case or controversy, appropriate for this Court to consider, has been fully briefed.  The issue of whether the Court should retain

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 10

jurisdiction over the remaining claims has also been fully briefed. The parties all agree that the Court has before it all that is necessary to determine the pending claims' dispositions.

## II.  <u>DISCUSSION</u>

### A. Case and Controversy

Federal courts have jurisdiction over only "cases and controversies[.]" *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). "The core of the case-or-controversy requirement is the triad of injury in fact, causation, and redressability. This doctrinal core serves to identify those disputes which are appropriately resolved through the judicial process." *New Jersey Peace Action v. Bush*, 379 F. App'x 217, 221 (3d Cir. 2010) (internal quotations and citations omitted). Where one of these elements is missing, there is no case or controversy on which the Court may rule. *See, e.g.*, *Russell v. DeJongh*, 491 F.3d 130, 133-34 (3d Cir. 2007)(finding there was no case or controversy where there was no injury-in-fact).

### B. Supplemental Jurisdiction

Federal district courts are courts of limited jurisdiction. Ordinarily, a district court has jurisdiction "over civil actions arising under 'the Constitution, laws, or treaties of the United States' (federal question jurisdiction) and civil actions between citizens of different states with the amount in

controversy exceeding the sum or value of $75,000 (diversity jurisdiction)." *Rockefeller v. Comcast Corp.*, No. 10-4494, 2011 WL 1468701, at * 1, 2011 U.S. App. LEXIS 7942, at *2 (3d Cir. Apr. 18, 2011) (quoting 28 U.S.C. §§ 1331, 1332(a)). The Supreme Court has "interpreted the diversity statute to require 'complete diversity' of citizenship." *C.T. Carden v. Arkoma Assoc.*, 494 U.S. 185, 187 (1990). That means "every plaintiff must be of diverse state citizenship from every defendant." *In re Briscoe*, 448 F.3d 201, 215.

Title 28, Section 1367 of the United States Code provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367. It goes on to state that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if--(1) the claim raises a novel or complex issue of State law,(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,(3) the district court has dismissed all claims over which it has original jurisdiction, or

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 12

(4) in exceptional circumstances, there are other compelling

reasons for declining jurisdiction." 28 U.S.C. § 1367.

### III. <u>ANALYSIS</u>

### A. Case or Controversy

In AFT Local 1825, VISNA-CBU, and UIW-SIU's Counts III

(Violation of Title Twenty-Four, Sections 373(a) and 378(a)(8)

of the Virgin Islands Code) and IV (breach of the duty of good

faith and fair dealing); PBA and LESU's Count III (violation of

the separation-of-powers doctrine under Title Two, Sections

Twenty and Twenty-One of the Virgin Islands Code); and AFT Local

1826's Counts III (breach of contract), IV (violation of the

separation-of-powers doctrine under Title Two, Sections Twenty

and Twenty-One of the Virgin Islands Code), and V (breach of the

duty of good faith and fair dealing), the plaintiffs seek

declaratory, injunctive, and monetary relief. The Court may only

adjudicate those claims to the extent that they present a case

or controversy.

As a general matter, injury, causation, and redressability

are essential elements of a case. *See New Jersey Peace Action*,

379 F. App'x at 221. No case or controversy exists for a court

where any of these elements is missing.  In the legislative

context, the repeal of an injurious and objectionable law

removes the injury and obviates the need for redress. To that

end

> [i]n a string of cases, the [United States Supreme] Court has upheld the general rule that repeal, expiration, or significant amendment to challenged legislation ends the ongoing controversy and renders moot a plaintiff's request for injunctive relief. *See, e.g., Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 474, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990); *Mass. v. Oakes*, 491 U.S. 576, 582–83, 109 S.Ct. 2633, 105 L.Ed.2d 493 (1989); *Princeton Univ. v. Schmid*, 455 U.S. 100, 103, 102 S.Ct. 867, 70 L.Ed.2d 855 (1982); *Kremens v. Bartley*, 431 U.S. 119, 128–29, 97 S.Ct. 1709, 52 L.Ed.2d 184 (1977); *Diffenderfer v. Cent. Baptist Church, Inc.*, 404 U.S. 412, 415, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972).

*Fed'n of Adver. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 930 (7th Cir. 2003). Requests for declaratory relief are similarly mooted by such changes to the challenged legislation. *See, e.g., Chem. Producers & Distribs. Ass'n v. Helliker*, 463 F.3d 871, 875 (9th Cir. 2006). By contrast, where a viable claim for damages exists, a case is saved from mootness. *Khodara Envtl., Inc. ex rel. Eagle Envtl. L.P. v. Beckman*, 237 F.3d 186, 196 (3d Cir. 2001).

Here, the plaintiffs sought declaratory, injunctive, and monetary relief from VIESA's eight percent provision, which reduced salaries by eight percent for two years. VIESA has lapsed, however, and the law is no longer in effect. That development undermines the legal foundation on which the

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 14

plaintiffs' case or controversy stands in at least two significant ways. First, the plaintiffs' members' salaries are no longer subject to injury occasioned by the eight percent reduction. Second, because declaratory and injunctive relief are both prospective forms of relief, *see, e.g.*, *Rembert v. Sheahan*, 62 F.3d 937, 940 (7th Cir. 1995), such declaratory or injunctive relief could not redress a claim of reduction of wages, as there is no imminent salary reduction. Significantly, insofar as the plaintiffs seek declaratory or injunctive relief on their claims, their claims are moot. *See Helliker*, 463 F.3d at 875; *Fed'n of Adver. Indus. Representatives*, 326 F.3d at 930; *Khodara Envtl.*, 237 F.3d at 196. The plaintiffs' claims can only survive insofar as they seek monetary relief for which the territory may be liable.

The Virgin Islands, like most states, enjoys immunity from money judgments unless such immunity is waived. *See, e.g.*, *Wiltshire by Wiltshire v. Gov't of the Virgin Islands*, 893 F.2d 629, 633 (3d Cir. 1990)("If the government of the Virgin Islands is to be held liable in this case, some act of the legislature must satisfy the strict test for waiver of sovereign immunity.") There are two well established areas in which the Virgin Islands has waived some of its sovereign immunity.

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 15

In accordance with the Revised Organic Act, the Virgin Islands may be sued in cases arising out of contract. 48 U.S.C. § 1541(b). In accordance with the Virgin Islands Tort Claims Act, the Virgin Islands may also be sued in tort. V.I. CODE ANN. tit. 33, § 3408. Claims for money damages which do not fall within one of these waivers are barred by the Virgin Islands' sovereign immunity. *See Wiltshire*, 893 F.2d at 633. To the extent that the remaining claims are viable claims, sounding in either common law tort or in contract, they may survive. To make that determination, the Court will address each count in turn.

**1. The Separation of Powers Claims**

The Court first considers PBA and LESU's Count III, and AFT Local 1826's Count IV. ATF 1826, the PBA, and the LESU each allege a violation of the separation-of-powers doctrine outlined in Title 2 of the Virgin Islands Code, Sections 20 and 21, and possibly the Revised Organic Act (the "Organic Act").[2] Such a

---

[2] The Court notes that, based on the complaints, it is unclear whether these claims were initially brought as territorial claims, under V.I. CODE ANN. tit 2, §§ 20-21, or federal claims under the Organic Act. The complaints specifically cite to the Virgin Islands Code.

> The VIESA violates 2 V.I.C. § 20 in that Defendant de Jongh abdicated his responsibilities under §20 by failing to recommend for consideration a proposed comprehensive program and financial plan to Defendant Legislature.
> * * *

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 16

claim sounds neither in common-law tort nor in contract, and thus falls outside of the Virgin Islands' waivers of sovereign immunity.

The Court is unaware of any Virgin Islands statute which waives sovereign immunity for this purpose, or of a federal statute which allows the plaintiffs to claim money damages for a violation of the Organic Act. *See O'Neill v. Com. of Pa.*, 459 F.2d 1, 2 (3d Cir. 1972)(finding that the sovereign immunity "bar applies to any direct suit against a state for money damages in the absence of consent regardless of the statutory basis for federal jurisdiction."). As such, the only relief that might possibly be available against the Virgin Islands for such a purported violation is injunctive or declaratory relief. Claims in this matter for injunctive or declaratory relief were mooted by the expiration of the legislation at issue.[3] Accordingly, the separation of powers claims will be dismissed as moot.

---

> Defendant Legislature initiated its own program and financial plan instead of considering one that should have been originally initiated and submitted for consideration and evaluation by Defendant de Jongh, and therefore, Defendant Legislature violated 2 V.I.C. § 21.

(AFT 1826 Compl. ¶¶ 69, 71.) In later filings, the parties have attempted to cast the claims as federal in nature. In any event, the analysis as relates to these particular claims is coextensive.

[3] That result is in accord with other courts. *See, e.g., Chem. Producers & Distribs. Ass'n*, 463 F.3d at 875; *Fed'n of Adver. Indus. Representatives, Inc.*, 326 F.3d at 930.

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 17

## 2. The Territorial Claims

The Court next considers AFT Local 1825, VISNA-CBU, and UIW-SIU's Counts III (Violation of Title Twenty-Four, Sections 373(a) and 378(a)(8) of the Virgin Islands Code) and IV (breach of the duty of good faith and fair dealing); and AFT Local 1826's Counts III (breach of contract), and V (breach of the duty of good faith and fair dealing)(the claims are collectively referred to as the "territorial claims"). Each of these counts sounds in either contract or common-law tort. Significantly, the territorial claims are not federal claims. As such, the Court will first assess whether it may properly assert jurisdiction over these claims.

28 U.S.C. § 1367 ("Section 1367") states that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if--(1) the claim raises a novel or complex issue of State law,(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,(3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367. By its terms, Section 1367 requires that only one sub-section be true, in order for the Court to determine that an exercise of its

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 18

supplemental jurisdiction is unwarranted.  Where a district court chooses not to exercise supplemental jurisdiction over the claim, the statute of limitations on the claim is tolled both while the claim is pending and for a period of 30 or more days after it is dismissed. *See id*.

Trial courts are directed to "take into account generally accepted principles of judicial economy, convenience, and fairness to the litigants." *Growth Horizons, Inc. v. Delaware Cnty., Pa.*, 983 F.2d 1277, 1284 (3d Cir. 1993).  These considerations do not *per se* require that a district court dismissing all federal claims following a trial continue to exercise supplemental jurisdiction over local claims. *See id*. at 1285 ("In this case, the district court has already held a trial on the merits and has already heard all the evidence necessary to reach a decision on the plaintiff's contract claim. This circumstance *may* cause the district court to decide that claim rather than dismiss it.")(emphasis added).

In this matter, all federal claims have either been dismissed or, as above, found to be moot in light of the intervening change in law.  As such, the only remaining claims are territorial-law claims.  That fact alone would allow this Court to decline to exercise supplemental jurisdiction in this matter. *See* 28 U.S.C. § 1367. That said, the Court recognizes

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 19

that the several plaintiffs in this matter have already expended a great deal of effort and energy in the current litigation. Moreover, this litigation has been ongoing since 2011 – more than three years, as of the date of this opinion.

Considering the "generally accepted principles of judicial economy, convenience, and fairness to the litigants[,]" *Growth Horizons*, 983 F.2d at 1284, the Court will continue to exercise supplemental jurisdiction over the remaining claims. Having determined that jurisdiction is proper, the Court will address each of the territorial claims in turn.

**B. The Public Employee Relations Act Claims**

AFT 1825 asserts that the government violated the Public Employee Relations Act ("PERA"), V.I. CODE ANN. tit. 24, §§ 361 *et seq.* In order to assess that claim, a brief overview of the relevant law is necessary.

The PERA defines the relationship between the government and its employees.

> It is the purpose of this chapter to provide for orderly and constructive relationships between public employers and their employees. The Legislature finds and declares that the Government of the United States Virgin Islands shall fully accept the principle and procedure of collective bargaining and shall bargain in good faith with valid public employee organizations, subject, however, to the paramount right of the citizens of this Territory to keep inviolate the guarantees for their health, safety and welfare.

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 20

V.I. CODE ANN. tit. 24, § 361. The PERA grants rights of exclusive representation in bargaining to public employee collective bargaining units. *Id.* § 373. PERA also protects public employees from unfair labor practices, such as refusal to bargain in good faith, and violation of the terms of any valid collective bargaining agreement. *Id.* § 378. To enforce such terms, labor organizations are empowered to bring suits against the government for violation of the collective bargaining agreements. *Id.* § 383. The government's prerogative is protected by the PERA as well, which states that

> No contract or other instrument of agreement between the public employer and an exclusive representative shall be valid to the extent such contract or agreement unduly interferes with the right of the public employer to establish and execute public policy by:
>
> (1) directing and supervising employees;
>
> (2) determining qualifications and standards for hiring and the content of examinations therefore;
>
> (3) hiring, promoting, transferring, assigning, retaining, disciplining, suspending, demoting, or discharging employees for cause;
>
> (4) maintaining efficiency of operations;
>
> (5) determining methods, means and personnel by which the public employer's operations are to be conducted; and

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 21

> (6) taking such actions as may be necessary
> to carry out the mission of the public employer
> in times of emergency.

*Id.* § 374.

As PERA governs the employment relationship between the government and public sector employees, the Court will consider the remaining claims against PERA's backdrop.

## 1. Breach of Contract, Violation of Title Twenty-Four, Sections 373(a) and 378(a)(8) of the Virgin Islands Code

PERA prohibits the government from breaching any collective bargaining agreement. V.I. CODE ANN. tit. 24, § 378. Where the government does breach a collective bargaining agreement, the relevant labor organization may bring a suit against the government for breach of contract. *Id.* § 383.

There are four elements to a breach of contract claim in the Virgin Islands: "(1) an agreement, (2) a duty created by that agreement, (3) a breach of that duty, and (4) damages." *Bank of Nova Scotia v. Ross*, Civ. No. 2010-118, 2012 WL 4854776 (D.V.I. Oct. 12, 2012)(slip op.)(citing to *Arlington Funding Services, Inc. v. Geigel*, 51 V.I. 118, 135 (V.I. 2009)).

In this case, the Court, following trial, found the following facts regarding the collective bargaining agreements entered by AFT 1825 and AFT 1826:

> 12. The American Federation of Teachers ("AFT")
> is the collective-bargaining representative for
> educational       professionals       (the       "AFT

Professionals CBA"), paraprofessionals (the AFT Paraprofessionals CBA"), and support staff (the AFT Support Staff CBA) employed by the Government of the Virgin Islands. (Pls.' Jt. Ex. 16.)

13. The AFT, on behalf of Locals 1825 and 1826, entered into three collective bargaining agreements with the Government: one for professionals, one for paraprofessionals, and one for support staff (collectively, the "AFT CBAs"). (Tr. at 32, Pls.' Jt. Ex. 16.)

14. All of the AFT CBAs came into effect on September 1, 2007. All were set to expire on August 31, 2011. However, they have been extended by the parties on a day-to-day basis. (Tr. at 32.)

15. All of the AFT CBAs set forth detailed payment plans for wages or salaries and benefits for each class of AFT-member employees of the Government. (Pls.' Jt. Ex. 16 at 2, 6, 11, 17, 25-27.)

16. All of the AFT CBAs contain identical severance clauses, providing that should any provision conflict with Virgin Islands law it would be deemed inoperative. The remainder of the CBA would still be in effect. (Pls.' Jt. Ex. 16 at 3.)

17. All of the AFT CBAs contain identical integration clauses, providing that any modification to the CBAs had to be agreed to by all parties in writing. (Pls.' Jt. Ex. 16 at 16, 24.)

18. All of the AFT CBAs provide that the employees will not strike for the duration of the agreement. (Pls.' Jt. Ex. 16, AFT Professionals CBA at pg. 8; AFT Paraprofessionals CBA at pg. 40; AFT Support Staff CBA at pg. 49.)

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 23

> 19. All of the AFT CBAS set forth grievance and
> arbitration procedures that allow for either the
> AFT or its members to adjudicate any dispute
> involving the interpretation, violation,
> application, or performance of the CBAs. (Pls.'
> Jt. Ex. 16, AFT Professionals CBA at pp. 13–16;
> AFT Paraprofessionals CBA at pp. 8–12; AFT
> Support Staff CBA at pp. 11–14.)

*United Steel, Paper & Forestry, Rubber, Mfg., Allied Indus.*

*Serv. Workers Int'l Union v. Gov't of the V.I.*, 2012 WL 1155131

(D.V.I. March 29, 2012).

It is thus clear that a contract did exist between the

government and AFT 1825 and the government and AFT 1826.  The

issue before the Court is whether the passage of VIESA breached

that agreement. Though the PERA prohibits breaches of contract,

PERA specifically states that

> [n]o contract or other instrument of agreement
> between the public employer and [a labor
> organization] shall be valid to the extent such
> contract or agreement interferes with the right
> of the public employer to establish and execute
> public policy by . . . taking such actions as
> may be necessary to carry out the mission of the
> public employer in times of emergency.

V.I. CODE ANN. tit. 24, § 374. Thus, if the government's behavior

in passing VIESA falls within these parameters, it cannot be

considered a breach.

Considering PERA, then, the Court must determine whether

the actions taken by the government in passing VIESA were the

execution of "public policy by . . . taking such actions as may

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 24

be necessary to carry out the mission of the public employer in

times of emergency." V.I. CODE ANN. tit. 24, § 374.

During the trial in this matter, the Court made the

following findings with regard to the economic situation in the

Virgin Islands prior to the passage of VIESA:

> 59.   The fiscal-year 2011 budget was again
> revised on January 28, 2011, to project that
> total tax revenue would be approximately $701.9
> million and that there would be a deficit of
> approximately $75.1 million. (Tr. 172:23–173:2;
> Defs.' Jt. Ex. 15 at 3.)
>
> 60.   At that time, the VIOMB also projected a
> deficit for fiscal year 2012 of approximately
> $131.5 million. (Tr. 172:23–173:2.)
> 61.   The salaries and benefits of Government
> employees constitute approximately seventy
> percent of all Government expenditures. (Tr.
> 158:22–159:6.)
>
> * * * *
>
> 63.   Despite [several cost-saving] measures,
> by June 21, 2011, the VIOMB still projected a
> deficit of approximately $17.4 million for
> fiscal year 2011, a deficit of approximately
> $90.1 million for fiscal year 2012, and a
> deficit of approximately $49.9 million for
> fiscal year 2013. (Tr. 115:12–23; 175:20–23;
> Defs.' Jt. Ex. 15 at 5.)
>
> * * * *
>
> 66.   By June 21, 2011, the Governor exhausted
> his $500 million statutory borrowing
> authorization. To secure financing for this
> borrowing, the Governor leveraged future excise
> tax revenues to be collected on rum produced in
> the Virgin Islands. As of June 21, 2011, the
> Virgin Islands had only been able to make

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 25

> interest payments on this debt. (Tr. 156:8-
> 157:1; 158:5-16; 161:22-162:1; 162:3-5.)
>
> * * * *
>
> 68.   The [Virgin Islands Office of Management
> and Budget] projected that reducing salaries of
> Government employees by eight percent would save
> approximately $28 million annually. (Tr. 117:24-
> 118:13.)
>
> 69.   In support of VIESA, the Legislature
> found that "the current global economic crisis"
> and decreased economic activity in the Virgin
> Islands placed the Government of the Virgin
> Islands "in a precarious financial condition . .
> . ." VIESA, Act No. 7261, preamble.
>
> 70.   The Legislature further found that the
> burden of the "Government Operating budget is
> overwhelming and unsupportable for much longer .
> . . ." Id.

*United Steel*, 2012 WL 1155131.

As the Court has previously stated in this matter, the
Virgin Islands' economic concerns were "severe." *Id*. The Court
concludes that these circumstances presented the government with
a fiscal crisis. *See, e.g.*, *Buffalo Teachers Fed'n v. Tobe*, 464
F.3d 362, 365 (2d Cir. 2006)(characterizing "budget deficits of
$7.5 million for 2002-03, $30-$46 million for 2004-05, $76-$107
million for 2005-06, and $93-$127 million for 2006-07" as a
"fiscal crisis").

To address that crisis, the Legislature considered a number
of alternatives, including layoffs of hundreds of employees,
furloughs, and reduced work weeks. *United Steel*, 2012 WL

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 26

1155131. Each of these could have resulted in reduced personnel each day. As the Court previously stated, such actions would have "reduc[ed] the Government's ability to provide basic services." *Id.* Instead, the Legislature passed the VIESA, which, by cutting salaries by eight percent, was projected to save the government $28 million annually. *Id*. Once the Legislature determined the public policy response to the fiscal crisis, the salary decrease was put into effect by the government as a whole.

The Virgin Islands is not the first or only locale to face such a financial situation. For example, in *Professional Engineers in California Government v. Schwarzenegger*, 239 P.3d 1186 (Cal. 2010), the State of California faced a large budget deficit that was expected to grow to more than $40 billion. *Prof. Eng'rs in Cal. Gov't v. Schwarzenegger*, 239 P.3d 1186, 1190 (Cal. 2010). In response to this crisis, the Governor signed an executive order mandating unpaid furloughs for state employees. *Serv. Emps. Int'l Union, Local 1000 v. Brown*, 128 Cal. Rptr. 3d 711, 713 (Cal. Ct. App. 2011). Thereafter, the California legislature retroactively approved a furlough program. *Prof. Eng'rs*, 239 P.3d at 1220. This violated certain provisions of the collective bargaining agreements entered into by California public employee unions. *See id*. The California

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 27

Supreme Court found that collective bargaining agreements could not prevent the legislature from adopting legislation which reduced state employee compensation in response to the state's fiscal condition. *See id*. at 1223.

Similarly, the State of Florida experienced budget shortfalls in the 1990s. *See Chiles v. United Faculty of Fla.*, 615 So.2d 671, 677 (Fla. 1993). In response to the fiscal emergency caused by the shortfalls, state employee pay was frozen. *See id*. The Supreme Court of Florida upheld the wage freezing legislation, stating that "the legislature has discretion either to reduce the appropriations or to raise sufficient revenue to satisfy the appropriations it deems necessary to run the government." *Id.* As such, the Florida Court held, "[b]ecause of the substantial change in the financial conditions of this state, contractual employee obligations were subject to modification along with other budgeted items."

As in California and Florida, in response to severe budgetary shortfalls and large deficits, the Virgin Islands Legislature reduced expenditures by reducing pay to government employees. As this Court previously held in this case

> In the present case, VIESA was only enacted
> after a series of alternative measures were
> first considered and tried. The Government
> raised taxes on cruise-ship passengers, motor-
> vehicle rentals, and gross receipts; reduced
> appropriations for several departments and

>           agencies; increased filing fees for local
>           courts; sought to reduce energy consumption; and
>           borrowed $500 million. Yet, despite these
>           attempts to close the budgetary gaps, by June,
>           2011, it was clear that the Government would
>           still run a deficit for that fiscal year and was
>           projected to run a deficit of $90.9 million and
>           $49.9 million for the next two fiscal years,
>           respectively. With a statutory obligation to
>           balance the budget, see V.I. CODE ANN. tit. 2, §
>           251, and with personnel costs accounting for
>           nearly seventy percent of all Government
>           expenditures, it cannot be said it was
>           unreasonable or inappropriate for the Government
>           to look to reduce its employees' wages and
>           salaries as an emergency cost-cutting measure.

*United Steel*, 2012 WL 1155131.

It is well established that "[a] promise or other term of

an agreement is unenforceable on grounds of public policy if

legislation provides that it is unenforceable or the interest in

its enforcement is clearly outweighed in the circumstances by a

public policy against the enforcement of such terms."

Restatement (Second) of Contracts § 178. It is also well

established that "[a] public policy against the enforcement of

promises or other terms may be derived by the court from

[]legislation relevant to such a policy[.]" *Id.* at § 179.

Here, given the dire financial situation in which the

Virgin Islands found itself, the Court finds that the enactment

of VIESA was the execution of "public policy by . . . taking

such actions as may be necessary to carry out the mission of the

public employer in times of emergency." V.I. CODE ANN. tit. 24, §

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 29

374.  As such, the passage and enforcement of VIESA did not
constitute a breach of contract or violation of the PERA.
Rather, it was consistent with the PERA and the public policy
determinations of the Legislature.

**2. Breach of the Duty of Good Faith**

"Every contract imposes upon each party a duty of good
faith and fair dealing in its performance and its enforcement."
Restatement (Second) of Contracts § 205. "[T]o state a claim for
breach of the implied duties of good faith and fair dealing, a
party must allege: (1) that a contract existed between the
parties, and (2) that, in the performance or enforcement of the
contract, the opposing party engaged in conduct that was
fraudulent, deceitful, or otherwise inconsistent with the
purpose of the agreement or the reasonable expectations of the
parties." *LPP Mortgage Ltd. v. Prosper*, Civ. No. 2006-180, 2008
WL 5272723 (D.V.I. Dec. 17, 2008).

In this case, as discussed above, contracts existed between
the government and the several plaintiffs. As such, the first
element is satisfied.  The Court next considers the second
element, whether a party to the contract engaged in conduct that
was fraudulent, deceitful, or otherwise inconsistent with the
purposes of the agreement. *See id.* As the Court has discussed at
length, the evidence in this case shows that the Legislature

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 30

passed VIESA in response to a fiscal crisis in the Virgin Islands. This can hardly be the "bad faith" required to find a breach of the covenants of good faith and fair dealing.  Nothing on the record supports an inference that the contracts were negotiated in bad faith.  There is also no indication on the record that the government acted with the goal of "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." Restat. 2d of Contracts § 205.

## IV.   CONCLUSION

This Court has had occasion to review the very difficult position in which government workers were placed with the passage of VIESA.  The Court is also well aware of the difficult choices with which the government was faced prior to the passage of VIESA.  Indeed, this Court recognized that:

> The Unions negotiated a set salary for their members—Government employees. Understandably, the Union members' spending habits and quality of life are dictated by their salary expectations. The eight-percent salary reduction that VIESA dictates clearly works a severe hardship on many employees.
>
> At the same time, the Government, faced with revenue shortfalls and a high level of expenditures, found itself on the horns of a dilemma. It could honor the obligation to pay the negotiated salaries, while adding to a burgeoning debt. Alternatively, it could choose

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 31

> not to honor the salary obligations and focus
> instead on restoring a manageable fiscal
> balance. It opted for the latter option. That
> choice ignited an already combustible
> relationship.

*United Steel*, 2012 WL 1155131.

The Court also recognized the dire financial crisis in

which the government found itself, stating that:

> the Virgin Islands' current financial situation
> is precarious and has been for several years.
> Indeed, it is difficult to construe the
> borrowing of half a billion dollars for
> operating expenses as anything other than
> portending a Virgin Islands economy that
> subsists on shaky financial ground.

*Id.*

The factual underpinnings of those findings are not

disconnected from the mission of the government. Indeed, part of

the role of the government is to provide services to its people.

That role is not served without financial cost. Where, as here,

that cost cannot be met because of insufficient financial

resources and dire financial straits, the mission of the

government to serve the governed is compromised.

Those circumstances are precisely the types of

circumstances that are contemplated within the letter and spirit

of the PERA, and which would require "taking such actions as may

be necessary to carry out the mission of the public employer in

times of emergency." V.I. CODE ANN. tit. 24, § 374. Indeed, it is

*United Steel v. Gov't of the U.S.V.I.*
Civil Nos. 2011-76, 2011-77, 2011-78, 2011-79
Memorandum Opinion
Page 32

hard to conceive of a threshold that would require even more severe privation before it could be said that an emergency of the kind that PERA contemplates exists.

Given the financial emergency under which the Virgin Islands labored, the PERA afforded the government an opportunity to execute public policy to carry out its mission.  The government availed itself of that opportunity through the passage of VIESA. That action is not counter to, but rather conforms with, the law. Accordingly, the plaintiffs cannot recover on their claims that the government violated the law in this instance.

An appropriate judgment follows.